## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

TOMMY J. TOMPKINS, JR., on behalf )
of himself and all others similarly )
situated, )
                                   )
        **Plaintiff,** )        **1:20-cv-00033-JB-N**
                                     )
**v.** )
                                       )
**MVR HOLDINGS, LLC** )
**and MATRIX WARRANTY** )        **JURY TRIAL DEMANDED**
**SOLUTIONS, INC.,** )
                                       )
        **Defendants,** )

## AMENDED CLASS ACTION COMPLAINT

**COMES NOW** TOMMY J. TOMPKINS JR. ("Plaintiff") and, for himself and others similarly situated, files this lawsuit for damages, and other legal and equitable remedies, resulting from the illegal actions of MVR Holdings, LLC ("MVR") and Matrix Warranty Solutions, Inc. ("Matrix"). Specifically, Defendants negligently, knowingly and/or willfully contacting Plaintiff on his cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and the Alabama Telephone Solicitations Act, Ala. Code §§ 8-19C-1 *et seq.* ("ATSA"). Plaintiff brings this action to (1) stop the practice of placing calls using an "automatic telephone dialing system" ("ATDS") and/or using "an artificial or prerecorded voice" to the telephones of consumers nationwide without their prior express consent, (2) stop the practice of placing calls to cellular telephone numbers listed on the National Do Not Call Registry, (3) enjoin Defendants from continuing to place such calls to consumers, and (4) obtain statutory remedies for himself and class members injured by Defendants' unlawful conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and

experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THIS ACTION

1.     This Complaint addresses the unlawful telemarking campaigns perpetrated upon Plaintiff and many others by Defendants through automated robocalls made without any prior consent.  Robocalling has plagued American consumers for years and it's getting much worse. According to Consumer Reports, 48 billion robocalls were placed in the United States in 2018. This is higher than in any previous year and a 56.9% increase over the previous year. https://www.consumerreports.org/robocalls/mad-about-robocalls/. And the calls continued to increase in 2019.   According to YouMail, a company that tracks robocalls, reports that the total for 2019 exceeded the 2018 total by more than 10 billion calls, with 58.5 billion calls made nationwide.  That's 178.3 calls per person.

2.     Robocalls are now the largest source of consumer complaints to the FTC, accounting for more than 65 percent of the total.

3.     Robocalling, identified as a "scourge" by the U.S. government, is much more than a mere annoyance.  The constant deluge of robocalls reduces the productivity of nearly every adult American in having to take the time to either answer or block the call.  The scourge of robocalls has fundamentally altered how Americans use their phones, with far fewer consumers answering unrecognized calls.   This harms legitimate callers, such as businesses and emergency agencies, who have legitimate purposes for contacting consumers by phone and are willing to do so lawfully.

4.     The robocalling epidemic has hit Alabama residents particularly hard.  Recent data show that Alabama ranks third in the nation in the number of robocalls made per resident.

5.     The major reason the robocalling problem has exponentially increased nationwide and in Alabama is the extremely low costs made possible by highly effective automated telephone dialing systems.  A simple google search for "robocalls" will reveal ads for companies boasting the ability to make thousands of calls for just a few dollars.  One expert estimates that robocalling every citizen in the city of Seattle would cost only about $150. https://medium.com/@TProphet/the-broken-economics-of-robocalls-b58f4842a407.

6.     One of the most complained about telemarketing schemes relates to the sale of extended auto warranty plans through robocalling campaigns.  Some auto warranty companies, either directly or through agents, use automated systems to send thousands of unsolicited calls with messages regarding the expiration of the called party's manufacturer's warranty and an offer to sell an extended warranty.  Defendants engage in similar telemarketing campaigns.  As part of the marketing of their warranty products, Defendants placed thousands of automated calls to consumers' cell phones nationwide without having obtained any prior express written consent for the calls.  Specifically, Defendants MVR makes the telemarking calls on behalf of Defendant Matrix and others in order to sell warranty products.  Defendants' telemarketing robocalls were made to Plaintiff and others who had placed their numbers on the National Do Not Call Registry.

7.     Congress enacted the TCPA in 1991 to address the intrusion on person privacy posed by automated telephone calls.  Congress recognized automated calls as a nuisance, an invasion of privacy and threat to public safety and interstate commerce.  Through the TCPA, Congress provided a means for consumers to seek redress for unlawful calling practices.  The TCPA prohibits telemarketing calls to cell phones through the use of either an automated telephone dialing system or pre-recorded message or artificial voice messages.  The TCPA also establishes a nationwide Do-Not-Call Registry ("DNCR") and prohibits telemarketing calls to

3

numbers placed on the registry. The Defendants' calls violate the TCPA, including the rules regarding the DNCR.

8.     The Alabama legislature enacted the ATSA in 1999 to address the intrusion on personal privacy posed by unsolicited telemarketing calls. It recognized such calls as "intrusive and relentless invasion of the privacy and peacefulness of home." Ala Code § 8-19C-1(4) (1975). The ATSA was passed to provide Alabama consumers the power to decide whether or not to receive telemarketing calls and provides a means for consumers to seek redress for unlawful calling practices. The ATSA prohibits telemarketing calls to consumers who have placed their numbers on the national DNCR. The ATSA also prohibits the use of technology aimed at concealing the caller's identity, such as spoofing technology. The calls made by Defendants violate the ATSA.

## PARTIES

9.     Plaintiff is a resident of Mobile County, Alabama.

10.     Defendant MVR Holdings, LLC ("MVR") is a Missouri limited liability company with its principal place of business in Missouri.

11.     Defendant Matrix Warranty Solutions, Inc. ("Matrix") is a Nevada corporation with its principal place of business in Texas. Matrix's primary purpose is the selling and administration of automobile protection products and extended warranties.

## JURISDICTION AND VENUE

12.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 as Plaintiff has claims that arise under the laws of the United States.

4

13.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because the subject calls were placed into this District and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## FACTS COMMON TO THE CLASS

14.     The TCPA prohibits calls made to a cell phone with the use of either an ATDS or prerecorded or artificial voice without the call parties' consent.  For telemarketing calls, such as those placed by MVR to Plaintiff and class members, the TCPA requires prior express written consent be provided by every called consumer.

15.     Under ATSA, any Alabama consumer who has registered his or her phone number on the DNRC has provided notice of his or her objection to receive telemarketing calls.  Any person whose number is on the registry and who has received more than one telephone solicitation within a twelve (12) month period by or on behalf of the same entity may recover statutory damages under the ATSA against the violator up to $2,000 per violation.  See Ala. Code § 8-19C-7.  Calls knowingly made with technology, such as "spoofing," which is designed to block or otherwise circumvent a caller identification service also violate the ATSA and entitle the consumer to the same remedies.  See Ala. Code § 8-19C-5 & 7.

16.     In 2003, the federal government established the National Do Not Call Registry ("DNCR") in an effort to protect consumers from unwanted calls.  The DNCR allows consumers to register telephone numbers, thereby indicating their desire not to receive telephone solicitations at those numbers.  See 47 CFR. § 64-120(c)(2).  The TCPA and its implementing regulations prohibit telephone solicitation calls to telephone numbers listed on the registry.  See 47 U.S.C. § 227(c); 47 CFR. § 64-1200(c)(2) (the "Do Not Call Rule").  Any person whose number is on the registry and who has received more than one telephone solicitation within a twelve (12) month

5

period by or on behalf of the same entity may recover statutory damages under the TCPA against the violator. See 47 U.S.C. § 227(c)(5).

17.     All or part of MVR's business entails contracting with companies to make automated marketing calls on their behalf. The companies on whose behalf MVR contracts to make marketing calls include companies marketing automobile warranty products. One of the companies which hired MVR to make marketing calls on its behalf was Halo Vehicle Protection, LLC ("Halo"). In performing its contract with companies, including Halo, MVR uses automated systems to contact thousands of customers through their cell phones within a very short period of time and at a very low cost. Upon information and belief, the telemarketing campaigns conducted by MVR also employ pre-recorded or artificial voice technology.

18.     MVR, either directly or through agents, has robocalled thousands of consumers without their prior written express consent through the use of an ADTS and/or prerecorded or artificial voice technology. Many calls, including the calls made to Plaintiff, were made to numbers placed on the DNCR. Each call was made in violation of the TCPA and the ATSA.

19.     At the time MVR made or directed the calls to Plaintiff and class members, it was well aware of the TCPA and the ATSA requirements; and it was aware that its automated calls to consumers violated the TCPA and the ATSA and subjected it to the penalties provided therein.

20.     Further evidence of MVR's knowing and willful violations of the TCPA and the ATSA is the fact that some of the calls to Plaintiff and members of the class were made through the use of "spoofing" technology. That technology is purposefully designed to (1) mask the identity of the caller and (2) make the call appear to be from a local number in order to increase the likelihood that the consumer will answer. This tactic is designed to generate business and profit while at the same time skirting the legal consequences of what the caller knows are

6

unlawful calls. This bad faith effort to sabotage consumers' call screening efforts demonstrates the caller's knowledge that the calls are unlawful.

21.     Calls made with the "spoofing" technology violates the ATSA. See Ala. Code § 8-19C-5.

22.     The unlawful telemarketing calls repeatedly invaded the personal privacy of Plaintiff and each member of the class, causing them to suffer damages, injury-in-fact and entitling them to relief provided under the TCPA, including 47 U.S.C. § 227(b)(3)(B); and the ATSA, including Ala. Code § 8-19C-7. As described below, Plaintiff received automated telemarketing calls placed by MVR on behalf of Halo. As also described below, the calls made to Plaintiff were made for the purpose of marketing a automobile warranty product provided through Halo by Matrix.

23.     Matrix is liable under the TCPA and ATSA for the unlawful calls made by MVR. The calls were placed on Matrix's behalf in order to market and sell Matrix's warranty products. The calls by MVR on Matrix's behalf were made with Matrix's actual or apparent authority to act as its agent; and, in any event, MVR's actions were ratified by Matrix by, among other things, allowing its products to be marketed and sold through MVR's robocalling campaign and accepting benefits from MVR's marketing campaign which Matrix knew or should have known violated the TCPA and ATSA.

24.     The unlawful telemarketing calls repeatedly invaded the personal privacy of Plaintiff and each member of the class, causing them to suffer damages, injury-in-fact and entitling them to relief provided under the TCPA, including 47 U.S.C. § 227(b)(3)(B).

## FACTS RELATING TO PLAINTIFF

25.     In September of 2019, Plaintiff received at least two (2) automated calls to his cell phone which were placed by MVR.  These calls were identified as originating from (251) 753-7871 and (314) 696-5987.  When Plaintiff answered the calls, there was a short, multi-second delay, followed by a click and a human voice.  Plaintiff was in Alabama when the calls were placed.  Upon information and belief, other automated calls were made by MVR to Plaintiff.

26.     At least one of the calls were "spoofed," meaning that the caller used electronic means to manipulate how the calls would appear on Plaintiff's phone's caller ID function to make them appear to be local calls.

27.     During the calls, and in an effort to identify the caller and have the calls stopped, Plaintiff followed the prompts, expressed an interest in the warranty service and was eventually directed to a MVR sales representative.

28.     The MVR representative then sent Plaintiff an email following up on the marketing call.  Attached to the email was a proposed warranty plan (the "Plan").  The Plan description stated that "coverage" would be provided by Matrix Warranty Solutions.  In his email, the MVR salesman indicated that the Plan would be purchased "from us" and that "you will need us to be there down the road to pay your claims." (Emphasis added).  This represented that the warranty product being marketed through these calls was provided by both MVR and Matrix and that MVR had authority to act as Matrix's agent.

29.     The calls displayed *indicia* of an ATDS, including the delay and click described above.  All of the calls made by or on behalf of Defendants were made using an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

30. ,     Upon information and belief, at least one of the calls employed a pre-recorded or artificial voice.

31.     At all times relevant herein, Plaintiff's cellular telephone number was listed on the DNCR.  Plaintiff registered his cellular telephone number XXX-XXX-7871 with the DNCR for the express purpose of avoiding unwanted telemarketing calls.  Plaintiff's cell number was registered on the DNCR more than thirty-one (31) days prior to the calls.

32.     Plaintiff uses his cell phone number as his main residential line.

33.     MVR's calls were made for marketing automobile warranties or similar vehicle protection products, and not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(i).

34.     The calls were made for purposes of soliciting a sale of consumer goods or services, and/or for the purpose of obtaining information that may be used for the direct solicitation of a sale of consumer goods or services.  The calls were "telemarketing calls" and "telephone solicitations" within the meaning of TCPA.

35.     The calls were not isolated occurrences and were made in the course of a pattern of repeated transactions of like nature.

36.     The calls made to the (251) area code, were purposefully directed into Alabama with the expectation that the called party would be in Alabama.  By directing calls into Alabama, MVR purposefully availed itself to the benefits, privileges and requirements of Alabama law.

37.     Upon information and belief, the ATDS used by Defendants, or on their behalf, has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

38.     Upon information and belief, the ATDS used by Defendants, or on their behalf, also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

39.     Defendants did not have prior express written consent to place the calls to Plaintiff.

40.     The telephonic communications by Defendants, or on their behalf, violated 47 U.S.C. § 227(b)(1).

41.     Defendants' calls to Plaintiff also violated the regulations promulgated under the TCPA regarding calls to consumers whose numbers are included in the DNCR. Plaintiff received one or more such call within a twelve (12) month period by MVR or on its behalf in violation of the Do Not Call Rule. 47 CFR. § 64.1200(c)(2).

42.     The calls made by Defendants each constitute a "telephone solicitation" as that term is defined at 47 U.S.C. § 227(a)(4) and 47 CFR. § 64.1200(f)(14) and within the meaning of the ATSA.

43.     Through Defendants' aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA and the ATSA.

44.     Plaintiff has suffered actual damages and injury-in-fact, including but not limited to loss of time in answering the calls and tracing their origin, the loss of use of his phone for legitimate purposes, and his productivity. Such calls have also invaded Plaintiff's privacy and statutory rights provided under the TCPA and the ATSA.

45.     The harm suffered by the Plaintiff as a result of Defendants' TCPA and ATSA violations bears a close relationship with the types of harm for which the law has traditionally

allowed redress under common law claims for invasion of privacy, nuisance, conversion, trespass to chattel and wantonness.

## CLASS ACTION ALLEGATIONS

46.     **Class Definitions:** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and three Classes of similarly situated individuals, defined as follows:

### The TCPA Robocall Class

All individuals in the United States who during the four years prior to the filing of the compliant in this action: (1) received any telephone call placed by MVR or its agent(s) and/or employee(s); (2) made through the use of any automatic telephone dialing system and/or with an artificial or prerecorded message; and (3) made without the called party's prior expressed written consent.

### The TCPA Do Not Call Class

All individuals in the United States who during the four years prior to the filing of the compliant in this action: (1) received more than one telephone call placed by MVR or its agent and/or employees within a 12-month period; and (2) to a telephone number and/or a number that had been registered with the National Do Not Call Registry for at least 30 days at the time of each call.

### The ATSA Class

All Alabama residents who during the two years prior to the filing of the compliant in this action (1) received a telephone call placed by MVR or its agent and/or employees; and (2) to a telephone number that had been registered with the National Do Not Call Registry or the Alabama Public Service Commission for at least 30 days at the time of each call.

47.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers, and directors; (3) persons who

11

properly execute and file a timely request for exclusion from the Classes; (4) the legal representatives, successors, or assigns of any such excluded persons; and (5) Plaintiff's counsel and Defendants' counsel.

48.    **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have made telephone calls to thousands of consumers who fall into the Classes. Members of the Classes can be identified through Defendants' records.

49.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

#### The TCPA Robocall Class:

a)    Whether Defendants' conduct violated the TCPA;

b)    Whether Defendants and/or its agents systematically made telephone calls to consumers who did not previously provide Defendants or their agents with prior express consent to receive such telephone calls;

c)    Whether Defendants' telephone calls employed an artificial or prerecorded voice; and

d)    Whether Plaintiff and the members of the Robocall Class are entitled to treble damages based on the willfulness of Defendants' conduct.

#### The TCPA Do Not Call Class:

a)    Whether Defendants' conduct violated the TCPA;

b)    Whether Defendants placed telemarketing calls to numbers that had been

registered with the National Do Not Call Registry; and

c)      Whether Defendants' violations were willful and/or intentional; and

**The ATSA Class:**

a)      Whether Defendants' conduct violated the ATSA;

b)      Whether Defendants called an Alabama resident's telephone number that had been registered with the National Do Not Call Registry or whose objection to receive solicitation was provided to the Alabama Public Service Commission for at least 30 days at the time of each call;

c)      Whether Defendants and/or its agents utilized a method to block or otherwise circumvent the use of a caller identification service of the person being called; and

d)      Whether the unlawful calls were knowingly made in violation of the ATSA.

**Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct toward Plaintiff and each of the other members of the Classes.

50.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interest of the Classes and has retained counsel competent and experienced in complex class actions.  Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

51.     **Policies Generally Applicable to the Classes:** This class action is appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable

to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants'' practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

52. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

## COUNT ONE
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

53. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54. This claim is brought for Plaintiff individually and on behalf of the Robocall Class Members described above.

55.     MVR, directly or through its agent, placed telephone calls to Plaintiff's and Robocall Class members' cell phones without having obtained their prior express written consent.

56.     The calls were made with an ATDS and/or the use of pre-recorded or artificial voice.

57.     The calls were placed for the purpose of marketing, advertising and selling Halo's extended auto warranty product and services.   The calls constitute telemarketing and telephone solicitation as those terms are defined in 47 C.F.R. § 64.1200(f)(12) and (14).

58.     Each call was made in violation of provisions of the TCPA, including 47 U.S.C. § 227(b)(1)(A).

59.     The unlawful telemarketing calls repeatedly invaded the personal privacy of Plaintiff and each member of the class, causing them to suffer damages and entitling them to relief provided under the TCPA, including 47 U.S.C. § 227(b)(3).

60.     As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B).

61.     As a result of Defendants' knowing and/or willful violations of 43 U.S.C. § (b)(3), Plaintiff and the class members are entitles to increased damages of up to $1,500 per violation.

62.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT TWO
## VIOLATION OF THE TCPA'S DO NOT CALL RULE

63.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64.     This claim is brought for Plaintiff individually and on behalf members of the Do Not Call Class described above.

65.     Plaintiff and members of the Do Not Call Class placed their numbers on the DNCR.

66.     MVR, directly or through its agent, placed telephone calls to Plaintiff's and Do Not Call Class members' phone numbers listed on the DNCR without having obtained their prior express written consent.

67.     The calls were placed for the purpose of marketing, advertising and selling MVR's extended auto warranty product and services.     The calls constitute "telemarketing" and "telephone solicitation" as those terms are defined in 47 C.F.R. § 64.1200(f)(12) and (14).

68.     Each call was made in violation of provisions of the TCPA, including 47 U.S.C. § 227(c)(3) and the Do No Call Rule promulgated pursuant to the TCPA, 47 C.F.R. § 64.1200(c)(2).

69.     The unlawful calls repeatedly invaded the personal privacy of Plaintiff and each member of the class, causing them to suffer damages and entitling them to relief provided under the TCPA, including 47 U.S.C. § 227(b)(3)(B) and (c)(5).

70.     Each call was made in willful and knowing violation of the TCPA and the Do Not Call Rule.

71.     As a result of Defendants' violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and members of the Do Not Call Class are entitled to an award of actual damages or statutory damages of up to $500.00, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

72.     As a result of Defendants' knowing and willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the members of the Do Not Call Class are also entitled to an award of enhanced damages of up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

73. Plaintiff and the Do Not Call Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT THREE
## VIOLATION OF THE ALABAMA TELEPHONE SOLICITATIONS ACT

74. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75. This count is stated under the Alabama Telephone Solicitations Act ("ATSA"), Ala. Code Section 8-19C 1–12.

76. By registering with the Do Not Call Registry as alleged above, Plaintiff and members of the class have given notice of their objection to receiving telephone solicitations within the meaning of Ala. Code Section 8-19C-2(a).

77. Defendants violated the ATSA by making telephone solicitation calls to Plaintiff's telephone and the numbers listed on the DNCR by members of the class after notice of their objection to receiving such calls.

78. Defendants also violated the ATSA by knowingly utilizing a method to block or otherwise circumvent the use of caller identification service thereby obscuring the source of the solicitation calls made to Plaintiff and members of the class. This is a violation of Ala. Code § 8-19C-5(b).

79. Plaintiff and members of the class have received multiple telephone solicitation calls within a 12-month period by or on behalf of the Defendants in violation of Section 8-19C-2(a) and/or Section 8-19C-5(b).

80. Plaintiff and members of the class have suffered actual damages as a result of Defendants' violations of the ATSA, as setout above.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying each of the Classes as defined above, appointing Plaintiff as the Class Representative for each Class, and appointing his counsel as Class Counsel for each Class;

B. An award of actual monetary loss to Plaintiff and members of the Robocall Class from such violations or the sum of five hundred dollars ($500.00) for each violation of the TCPA, whichever is greater; all to be paid into a common fund for the benefit of the Plaintiff and the other Class Members;

C. An award of enhanced statutory damages to Plaintiff and members of the Robocall Class for Defendant's willful and/or knowing violation of up to $1,500.00 for each such violation of the TCPA; all to be paid into a common fund for the benefit of the Plaintiff and the other Class Members;

D. An award of actual monetary loss to Plaintiff and members of the Do Not Call Class from each call made in violation of 47 C.F.R. § 64.1200(c)(2) or damages of up to five hundred dollars ($500.00) for each unlawful call, whichever is greater; all to be paid into a common fund for the benefit of the Plaintiff and the other Class Members;

E. An award of enhanced damages to Plaintiff and members of the Do Not Call Class from each call made in knowing or willful violation of 47 C.F.R. § 64.1200 (c)(2) of up to three times the amount the statutory damages awarded pursuant to 47 U.S.C. § 227(c)(5)(B); all to be paid into a common fund for the benefit of the Plaintiff and the other Class Members;

F.  An award of actual monetary loss to Plaintiff and members of the ATSA Class from each call made in violation of ATSA or damages of up to two-thousand dollars ($2,000) per knowing violation of the ATSA; all to be paid into a common fund for the benefit of the Plaintiff and the members of the ATSA Class;

G.  An order declaring that Defendant's actions, as set out above, violate the TCPA and the ATSA;

H.  A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA; or

I.  A declaratory judgment that Defendant used an artificial or prerecorded voice;

J.  An Order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

K.  An Order requiring Defendant to identify any third-party involved in the autodialed and/or prerecorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

L.  An injunction requiring Defendant to cease all unsolicited autodialed and/or prerecorded calling activities, and otherwise protecting the interests of the Classes;

M. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

N.  An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA and the ATSA;

O.  An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

P.  An injunction requiring Defendant to cease all unsolicited calling activities and otherwise protecting the interests of the Classes;

Q.  An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

R.  Such other and further relief that the Court deems reasonable and just.


**TRIAL BY JURY IS DEMANDED AS TO EVERY CLAIM ASSERTED HEREIN.**


Respectfully submitted this the 30th day of October, 2020.


KENNETH J. RIEMER (RIEMERK8712)
UNDERWOOD & RIEMER, PC
2153 Airport Boulevard
Mobile, AL 36606
Telephone: (251) 432-9212
Facsimile: (251) 990-0626
Email: kriemer@alalaw.com

EARL P. UNDERWOOD, JR.
UNDERWOOD & RIEMER, PC
21 S Section Street
Fairhope, AL  36532
Telephone: (251) 432-9212
Facsimile: (251) 990-0626
Email: epunderwood@alalaw.com

**DEFENDANT MVR IS TO BE SERVED BY FIRST-CLASS CERTIFIED MAIL TO:**

MVR Holdings, LLC
c/o Mark VanRonzelen
2675 Blackforest Drive
St. Louis, MO  63129

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been filed with this Court's

CM/ECF system and were served upon all parties by electronic mail on October 30, 2020.

KENNETH J. RIEMER (RIEMK8712)